Our last case is U.S. against Texidor, 24-3314 and 3315. Mr. Kozlarek, did I get that right? Very close. May it please the court, Craig Kozlarek on behalf of the appellant Christopher Texidor, if I may please reserve five minutes of my time for rebuttal. Granted. Thank you. Your Honors, Amendment 826 to the United States Sentencing Guidelines state that acquittals are unique. Acquittals have long been afforded special weight, distinguishing them from conduct that was never charged and never passed upon by a jury. Because the district court here erroneously considered averments contained in the pre-sentence report, directly accusing appellant of cocaine culpability and factual conduct of which he was acquitted, this court should vacate sentence and remand for resentencing. The district court's consideration of acquitted conduct here, in practice, gave the information about the acquitted allegations contained in the PSR status tantamount to that of relevant conduct, which is contrary to the amendment as is now reflected in Section 1B1.3C of the Sentencing Guidelines. As I stated, appellant was acquitted of the allegation at count two relating to cocaine. Between trial and sentencing, Amendment 826 took effect November 1st of last year, specifically to exclude federally acquitted conduct from serving as relevant conduct, which was a reversal from prior practice. The district court here overruled objections from the defense, seeking to strike eight references to cocaine from the PSR, instead striking only one. So considering the acquitted conduct would, I agree, violate the amended Section 1B1.3, but why would it have any bearing on Section 1B1.4, which was not similarly amended? It was not similarly amended. It does contain a restriction that the court may not consider information if it is prohibited by law. Also, pursuant to 1B1.4, the court would be required to make a preponderance finding, which was not expressly made. Perhaps it was implicit in the fact that the court declined to strike the information that we had objected to. And in the PSR, of the eight references to cocaine, there really are two that we find particularly objectionable and prejudicial, the first being at Averment 3, which flatly states appellant is accountable for five kilograms and more of cocaine. That is, if that were found by a preponderance, that would be relevant conduct. How did the district court use that? Well, the district court did not make specific reference to the cocaine, to the cocaine allegations in announcing sentence. But ultimately, I think it's fair to assume that the court did consider the entirety of the PSR, including that Averment, as well as Averment 15, which specifically accuses Mr. Texedor of cocaine-related conduct, attributes hearsay to him that a co-defendant was looking for a new source of cocaine and that he was brokering kilogram-level deals. Well, given the district court's multiple references to the vast quantity of marijuana, why does it matter if there were some background lingering thoughts about additional cocaine activity? Well, as I stated, I think it's fair to presume that the court read and considered the entirety of the PSR in determining sentence. And ultimately, the court did decline to grant substantial variances that were requested on other bases, in part due to, it is stated in the record, the large amount of marijuana was a factor there. That was one of the expressly stated factors. Okay. So the idea is even, so taking the district court at face value, or what is it, like this was an extraordinarily large amount of marijuana, and for that reason, the district court both, the district court used the amount of marijuana, among other things, that were explicitly stated to determine what the guidelines range was and to determine what points within the guidelines range to select. Then why, like what, even if there were some error in not making explicit findings about the cocaine-related activity, why is that error not harmless? Well, the court also declined to go, denied a variance to go below the guidelines, ultimately imposing a sentence at the bottom of the standard range. So we submit that the improper consideration of the cocaine averments played a role in that decision as well. But we can't rule out that it did based on the record. Okay. And so you're asking us to say that there was some sort of background thought in the district court's mind when, despite like the explicit statements that the district court made about why it denied that variance request. Yes. Ultimately, all of the information, you can't unring a bell, as they say. Once information is received by the district court, there's no way to expel it from memory or consideration. Now, in enacting Amendment 826, the Sentencing Commission stated three policy goals, none of which were served by the decision here to not strike the averments in question from the PSR. The first policy goal is to promote respect for the law due to perceived unfairness of using acquitted conduct to increase sentences. To a non-attorney layperson, what do you mean my sentence is being increased? I was acquitted of that. How can they use that against me? And ultimately, the historic practice does allow for that. And the recent amendment is a slight turn from the previous practice, a slight limitation on the previous practice. The second policy consideration was the erosion of the jury trial rights, stating that if there's no practical, there are oftentimes no practical upsides for a defendant to go to a jury trial. If I'm charged with 10 counts, the government really just needs one, and then they can shoehorn in all of the other conduct for sentencing purposes. I have to win on everything. They only have to win on 10% of things. So ultimately, that was one of the policy goals. And as I stated in opening, acquittals are unique. So the consideration of the acquitted conduct as occurred here does not promote respect for the law and further erodes the jury trial right. Because acquittals are unique and the trier effect passed upon the evidence related to cocaine and ultimately found it insufficient to convict, that does have a preclusive double jeopardy effect, going again to acquittals being unique. So listening to your argument and your answers to Judge Freeman's questions and Judge Porter's questions, it sounds like your argument relies on interpreting the district court's silence after overruling the objections in large part. It granted the objection to one paragraph, from what I recall. But the silence after that, we should interpret it as nonetheless as still having relied on the information. And that the harm is, despite the fact that it was a bottom of the guideline range sentence, the harm is because the variances were denied. And so it could have been even lower if we interpret the silence as having relied upon cocaine. Correct. If there was an express statement of I'm granting the striking, I'm not considering this information, then we wouldn't have much of an argument. But the fact is the information persists within the PSR and ultimately the variance was denied below the sentencing guidelines. That being on a different basis, of course, that is laid out in the briefs regarding Attorney General Garland's memorandum. But regarding the relevant conduct under 1B.1.3, because the district court improperly considered the acquittal conduct when fashioning sentence, we submit that the sentence imposed is procedurally unreasonable. The information that appellant is culpable, which was stated in the present tense for five kilograms and more of cocaine, was clearly erroneous. If that were found by preponderance, that would be relevant conduct. And the district court's opinion that 1B.1.3C did not preclude its consideration was likewise erroneous. Further consideration of these claims without a preponderance finding was an error. We submit the court should reverse and remand for resentencing with this information stricken. Now, I do have some time left for. Talk about the wire fraud. Oh, yes. So why? I guess the argument is marijuana might be rescheduled. And if that happens, then I would suffer adverse collateral consequences. Why isn't that argument too speculative? We don't know what's going to happen with that proposal. Well, it is a it's a collateral consequence that it could. It would take 20 years to dis to disprove that possibility because he is serving 20 years on the Paycheck Protection Program fraud and 292 months on the drug count. I would submit that it's not speculative based on that. It was more of an argument based on the attorney general's statements rather than actual rescheduling. Ultimately, we did ask the court to treat the marijuana in this case as a Schedule three substance because of the effect that that would have on the sentencing guideline range. Of the 40 total offense level points found here, 30 were for marijuana weight due to grouping. Zero were actually ultimately for the PPP case, although the court, of course, is permitted to consider that that offense and that conduct. But had the court treated this as a Schedule three, which the attorney general, the chief law enforcement officer of the United States had indicated his belief to be proper, then the guidelines would be reduced from a 40 to a 30. And that is a very substantial difference, ultimately, in the guideline range. I see my time is up. Thank you. Thank you. Thank you. Good morning. On behalf of the United States, Jeffrey St. John, may it please the court. Your Honor, I'll address, because it was the focus of my friend's comments, I'll address the issue of the cocaine related amendments first. But I have a feeling most of your questions are going to go elsewhere. I could be wrong about that. I don't believe it was an abuse of discretion for the court to, pursuant to 1B1.4, allow those amendments to remain in the PSR. And I think it's a fair reading of the transcript that the court gave them almost no consideration, if any consideration, in passing sentence. As some of you noted, what was driving the court's sentencing here was three things. The extreme amount of drug weight, though the drug was marijuana, the significant quantity. The gun violence, the shooting up of homes and a vehicle. And then the fact that the defendant committed a new offense while on pretrial release, namely the wire fraud pandemic offense. Those were what were driving the court's sentence here. And as you also noted, the end result was a low end guideline sentence. So it's hard. It would be hard to see how any error, if the court were to find there was harmful error in the in not striking these these amendments, these limited amendments. It's hard to see how there would be harmful error in this case, given. On 1B1.4, when I asked your friend about that, he noted that that language says you can consider all these things unless they're otherwise prohibited by law. Why doesn't that sweep in the amended 1B1.3? It doesn't because there's a companion statute, Your Honor. I don't have the it's in the 200s or 2000s that accompanies that. That basically apes the language. 1B1.4 apes the language of a statutory provision that says the district court is not precluded from considering other matters as background information. It's in the 18 U.S.C. code. So that's why it would be within the law to still. In other words, I don't think that the amendment to 1B1.3 negates that 1B1.4. I'll just touch a little bit now and turn to the sentences imposed. Well, actually, before you do that, is there any special obligation when a PSR refers to acquitted conduct? Is there a special obligation to find by a preponderance of the evidence explicitly that that that that fact has been found as opposed to all the other facts that are that are listed in the PSR? I think in fairness, the commentary to 1B1.4 uses the phrase preponderance of the evidence. It does note that the district court is supposed to anything it considers it should be found by a preponderance of the evidence. And I can see that the court doesn't encamp that phrase here. But this the context is important. This was a trial that the court heard all this evidence. It's not this. These are sort of facts that are being put in somewhere else. And is the court going to make a specific finding? I think this court can fairly infer that the court must have found those affirmance to be sufficiently reliable to at least meet a preponderance of the evidence standard. But that phrase is not stated by the district court. I have to acknowledge that. And so was it an error not to make that statement explicitly? I assume that you're saying it's harmless, but was it in fact an error? I don't think so because I don't see a case or a provision that says that must be encanted. It says the district court has to find it by a preponderance of the evidence. And I think a fair reading of the record is that the district court found it by a preponderance of the evidence. Is it a fair reading of the record that when there was an objection to the inclusion of that information, that objection encompassed an argument that there was not a preponderance of the evidence supporting the claim? Well, I don't know. I would say no. I don't think it was that specific. But I think it was just an objection to the idea of the material remaining in the offense conduct section of the PSR. And I want to draw that distinction, too, because just because the matter remained in the offense conduct section of the PSR is not the key point. The key point is that it wasn't treated as part of relevant conduct. And therefore, it didn't impact Mr. Texeter's guideline range. And that really is the crucial issue, I think, that it wasn't treated as relevant conduct, which is what 1B1.3 says you absolutely cannot do going forward. Even if the district court didn't make the finding, let's just assume it didn't make the finding, it did reflect that it knew it could only be used for a sentence within the guideline range. So part of Mr. Kozlowich's argument was that the cocaine was relied upon in denying the variance. It seems like you're saying it couldn't have been because the district court said it can't be used to determine a guideline range. No, it could have been used. The way I understand it is the 1B1.4 information can be used not to calculate the guideline range, but to either locate a sentence within or below the guideline range. So it could be used in argument for a variance. My argument for that piece, Your Honor, as a fair reading of the record is the district court more or less said I can keep this in. This is how I read the district court. I can keep this in here, but there's no indication to me that she relied upon it at all in passing sentence. She didn't reference the cocaine. After she makes the ruling that I'm going to allow it to stay in, she doesn't reference the cocaine one time, and I noted the things that were driving the district court sentence in this case beyond the cocaine. I'll just touch a little bit on the two different sentences that were imposed here, and I just want to note that it seems to me, and counsel didn't make much argument on this, but in his brief, his argument boils down to the idea that the district court was unreasonable because it followed the guidelines, because that's all the district court did in this case as to both the main sentence I'll call it and the wire fraud sentence. The main sentence is a low-end guideline sentence that was pegged to the guideline. The guideline was not objected to, and then as far as the wire fraud sentence, all that is is a product of the court following the guideline at 5G1.2, which directly instructs district courts on how to handle sentencing in this kind of situation where you have multiple counts of conviction. And while the stat max sentence of 240 months jumps out as seemingly a little odd, it really is just a product of the court following the sentencing regime that's set forth at 5G1.2, which specifically says if you're going to sentence on a count where the stat max is lower than the low end of the guideline, you peg it to the stat max, and that's why some of the other lesser counts here at sentencing also had the stat max sentence. On the adverse collateral consequences or the potential for them, what standard should we use? It's hypothetically possible. The attorney general has been talking, so it's more than just hypothetical. There's a substantial possibility that he'll get relief. How do we know? Well, I would start with the concurrent sentence doctrine because that is part of our argument, that the court shouldn't even necessarily reach this issue because this is just concurrent, which is what it was. It was a concurrent sentence to the other sentence. And then as far as what standard of review to apply, you know, I would argue that this would be more on the line of a plain error type standard in this case because there's really no indication that the defend— no one on the other side, in other words, even called this as a problem to the court. It was more or less just passed upon and accepted. So unless the court has any further questions for me— Well, if he—if marijuana does get rescheduled and so Mr. Texedor gets relief on his marijuana trafficking sentences, is there some avenue for him to challenge later his PPP wire fraud? I think there would be if there's a retroactive change in the guidelines, for example, that lowers the guideline range. I think here all the counts would have to be revisited because there was a unitary guideline range. So I don't think Mr. Texedor is stuck without relief. So 3582 is— C2 or C—3582 is the statute. You're correct. That would say for a retroactive revision of a lowering of the guidelines. It seems like not only would there have to be a change in scheduling, but there'd have to be—there'd have to be— There'd have to be a lot of things to be changed. A retroactive guidelines change, but one that didn't exclude violent conduct, which most retroactive— I mean, I haven't seen a guidelines amendment, a retroactive drug guidelines amendment that did not exclude violence or— Right. So it seems like there's many steps. Absolutely. And in this particular case, although Mr. Texedor's main counterconviction is a conspiracy to traffic marijuana, he's also convicted of the offense of conspiring to use a firearm in furtherance of drug trafficking. So that right on its face is going to put up alarm bells to anyone who's assessing whether something should be commuted or pardoned or a retroactive guideline. Well, just going to Judge Porter's question about how speculative or not, I guess I'm just trying to gauge not only what do we consider too speculative, but how speculative any collateral consequences would be, any positive collateral consequences. And it seems like it's not just about rescheduling. It's about other things that would happen as well. As I read the brief, it's looking toward a future date where—I think the implicit argument is, well, this involves marijuana, and the arc of the law is to make penalties less severe. And so I'm just, in a very general way, concerned about that. And the problem is the defendant should have—if he was really concerned about that, he should have understood that 5G 1.2 is going to direct the court to do what it did, and it needs to stand up and say, hey, don't follow that in this case. I want you to give me a particularized sentence on the wire fraud that looks at this— So Ben Lawful, is it possible that the court would have agreed to do that? I think so. I think it's possible. But it's hard to ask a district court to just sort of guess at the idea that, oh, this is a case where I'm not going to follow the template, even though I'm not being asked to, and sort of say, I'm going to assume that Mr. Texler may get this relief later on, and so I'm going to vary from what's the status quo provision in the guideline. It just seems like it would be an impossible thing to find a district court unreasonable for not following the template in a case where it's not asked to do anything other than follow the standard procedure. Is there an authority that you know of that the district court didn't have to follow the grouping rules? Well, I think the district court has discretion not to follow 5G 1.2. I certainly think that's within the discretion of the district court. But that provision is written almost as a step-by-step instruction of what the courts should do, and my experience has been they follow that. And this court just did what other courts would do, which is they would follow it, absent an argument from the other side saying, hey, could you maybe use your discretion to not do that here? That could have happened. It just didn't happen. Thank you. Okay. Thank you. Just a couple of follow-up points, Your Honor. The question came up regarding whether the defense had specifically objected to the finding of cocaine by way of a preponderance. As I recall in either our sentencing memo or our objections to the PSR, we did state that while the acquittal is not controlling because that is a beyond-a-reasonable-doubt standard, this is a preponderance standard, we did argue that it was not proven by a preponderance, and thus the court should not consider it. And ultimately that was overruled by the district court. Regarding the question of speculative harm and the concurrent sentence doctrine, I note in my brief that relief could come any number of ways. Assuming the DEA ultimately does reschedule, as the previous Attorney General had proposed, and the present Attorney General has not reversed that or vacated that memorandum in any way, that would likely result in an amendment to the sentencing guidelines, could result in, as the state of Maryland did when marijuana was legalized, very broad blanket pardons for marijuana offenses. Or it could come from, well, those would be the two big ones, would be sentencing commission president and, of course, Congress could pass a law similar to what had occurred with the Fair Sentencing Act with reducing the crack powder disparity. We don't know what the next 20 years hold. We won't be able to say. Why not wait and see, and if events happen to your client's benefit, just file an appropriate motion at that time? The concern would be that if the 292 was reduced in some way, I don't expect that that would be vacated in its entirety, but if that were reduced in some way, it could only, in practice, be reduced down to 240 months due to the concurrent sentence being served on the PPP case. I think the government's position was that because there was only one guidelines range, then any reduction in guidelines would affect all counts of conviction. Well, we certainly hope that that will be true when the day comes, but ultimately at this point it's very difficult to say. So to affirm the sentence as it is now does present the risk of significant collateral consequence if that were not the case, ultimately. Unless there are any further questions, I have nothing further. Okay. Thank you. Thank you. For your excellent advocacy, both sides, and we'll take the matter under advisement.